**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZAIRA V. ALVAREZ-GUATIBONZA, ) | NO. 5:26-cv-02157-KS |
| Petitioner, ) | |
| v. ) | MEMORANDUM OPINION AND ORDER |
| ADELANTO ICE PROCESS CENTER ) et al., ) | |
| Respondents. ) | |

Before the Court is the Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Zaira V. Alvarez-Guatibonza ("Petitioner") on April 27, 2026. (Dkt. No. 1.) Petitioner, who is currently detained at the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California, is seeking immediate release from custody, or alternatively, a new bond hearing before an Immigration Judge ("IJ"). (*Id.* at 7-8.) Respondents filed an Answer to the Petition on May 4, 2026. (Dkt. No. 11.) Petitioner filed a Reply on May 6, 2026. (Dkt. No. 12.). For the following reasons, the Petition is **GRANTED**.

## FACTUAL BACKGROUND

Petitioner is a native and citizen of Honduras who entered the United States on April 4, 2024. (Dkt. No. 1 at 3-4 ¶¶ 10, 16.) Petitioner was detained upon entry and released on parole on April 5, 2024. (*Id.* at 4 ¶ 16.) On June 25, 2025, Petitioner was again taken into ICE custody and transferred to the Adelanto ICE Processing Center where she remains detained. (*Id.* ¶ 17.)

On November 17, 2025, an IJ denied Petitioner's application for asylum and ordered Petitioner removed to Honduras.  (*Id.* ¶ 18.)  On December 9, 2025, Petitioner timely filed an appeal of the IJ's decision to the Board of Immigration Appeals ("BIA").  (*Id.* ¶ 19.)  Because Petitioner's appeal is still pending, her removal is automatically stayed pursuant to 8 C.F.R. §1003.6(a).  (*Id.*)

On March 6, 2026, Petitioner received a bond hearing before an IJ.  (*Id.* ¶ 20.)  During the hearing, the IJ orally predicated denial of bond based on "danger to the community" and a "lack of a relationship" between Petitioner and the bond sponsor.  (*Id.*)  However, the IJ's written order proffers "flight risk" as the basis for denying bond.  (*Id.*)

**LEGAL STANDARD**

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3).  "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order."  *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020).

**DISCUSSION**

Petitioner asserts that her prolonged detention is without statutory authority and in violation of her Fifth Amendment due process rights.  (Dkt. No. 1 at 5-6 ¶¶ 21-23.)  Alternatively, Petitioner argues that she is entitled to a new bond hearing because the IJ who previously denied her bond violated her due process rights by applying improper legal

2

standards and failing to provide a reasoned explanation for denying bond. (*Id.* at 6-7 ¶¶ 24-27.) Petitioner seeks her forthwith release, or alternatively, that "Respondents [] grant Petitioner a Constitutionally valid bond hearing, evaluating only the proper criteria, in which, Respondents must carry the burden of establishing, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community." (*Id.* at 7-8.)

In the Answer, Respondents contend that "Petitioner's remedy in this case is administrative: if she believes the judge applied the law incorrectly, she can appeal that bond determination to the Board of Immigration Appeals." (Dkt. No. 11 at 4.) "And if she believes her circumstances have materially changed, then she can seek another bond hearing on that basis." (*Id.*) Therefore, Respondent's assert that "Petitioner should be required to exhaust her administrative remedies, and on that basis this Court should deny her Petition." (*Id.* at 1.)

In the Reply, Petitioner argues that "administrative exhaustion is not required" because "the underlying administrative proceeding was void and the BIA cannot grant constitutional relief." (Dkt. No. 12 at 4.) Additionally, Petitioner avers that "Respondents have failed to establish statutory authority for detention or clear and convincing evidence of risk." (*Id.*)

## I.      <u>Administrative Exhaustion</u>

Although 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," Ninth Circuit precedent may "require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Specifically, courts may require prudential exhaustion if: (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

If a petitioner does not exhaust administrative remedies, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo*, 646 F.3d at 1160. However, even if the *Puga* factors weigh in favor of prudential exhaustion, courts may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1139 (S.D. Cal. 2025).

Here, the Court finds that the *Puga* factors do not weigh in favor of requiring prudential exhaustion. First, the BIA's expertise is not necessary to decide the *legal* questions at issue here—whether Petitioner's continued detention complies with statutory authority and due process. *See Scott v. Wamsley*, No. 2:25-cv-1819, 2025 U.S. Dist. LEXIS 253288, at *10 (W.D. Wash. Dec. 8, 2025) (finding the first *Puga* factor leaned against requiring exhaustion because the issue of the petitioner's continued detention was "fundamentally a question of law"). Second, "waiver of the prudential exhaustion requirement will not 'encourage the deliberate bypass of the administrative scheme,'" and "[a]ny risk of deliberate bypass of administrative procedures is further reduced by the fact that district courts will only have jurisdiction in the 'rare case[s]' where future plaintiffs allege a 'colorable' constitutional or legal challenge to the government's procedures." *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (quoting *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). Lastly, because the primary issue in the Petition is whether Respondents violated statutory authority and due process, "the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Id.*

4

Even if the *Puga* factors weighed in favor of requiring exhaustion, Petitioner would be excused from exhausting administrative remedies because further administrative proceedings would not address the primary issue presented in the Petition—whether Petitioner's continued detention complies with statutory authority and due process. *See Venega-Maltez*, 2026 U.S. Dist. LEXIS 66794, at *20 ("Petitioner is excused from exhausting administrative remedies under *Liang* because further administrative proceedings would not address the issue presented by the Motion[,] that his redetention was constitutionally deficient."); *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (quoting *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)) ("An exception to the exhaustion requirement has been carved for constitutional challenges to . . . [DHS] procedures."). Therefore, the undersigned finds that Petitioner was not required to exhaust her administrative remedies before bringing this Petition.

## II.    Unlawful Prolonged Detention

### A.    Statutory Authority for Detention

Petitioner asserts that Respondents "cannot rely on §1231 as a basis for her ongoing incarceration" because "Petitioner's timely appeal to the BIA remains pending, [and] her removal is automatically stayed by operation of law." (Dkt. No. 1 at 5 ¶ 21.)

Two different statutory provisions govern the civil detention of noncitizens who are involved in immigration proceedings. Broadly speaking, 8 U.S.C. § 1226(a) governs the arrest, detention, and release of noncitizens in the United States pending a removal decision. The Supreme Court has explained that Section 1226(a) authorizes the government to detain certain noncitizens, like Petitioner, who are already in the country pending the outcome of removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018). Notably, Section 1226(a) confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new

hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022).

On the other hand, 8 U.S.C. § 1231(a) governs the detention, release, and removal of noncitizens with a final order of removal. Section 1231(a) provides that once a final order of removal is entered against a noncitizen, the government shall detain the noncitizen during a 90-day removal period while it effectuates the noncitizen's removal. 8 U.S.C. § 1231(a)(2); s*ee also Zadvydas*, 533 U.S at 683.

The "removal period" is the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order"; or "(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Thus, "the removal period begins when [a noncitizen] is 'ordered removed,' and the removal order becomes 'administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021). "An order of removal becomes administratively final upon the earlier of (i) 'a determination by the [BIA] affirming such an order,' or (ii) 'the expiration of the period in which the [noncitizen] is permitted to seek review of such order by the Board of Immigration Appeals.'" *Satah v. Rios*, No. 5:26-cv-01953-KES, 2026 U.S. Dist. LEXIS 106260, at *6 (C.D. Cal. May 13, 2026) (quoting 8 U.S.C. § 1101(a)(47)).

Here, Petitioner's appeal of her removal order is still pending before the BIA. (Dkt. No. 1 at 4 ¶ 19.) Thus, Petitioner's removal order is not yet "administratively final," and Petitioner is not subject to mandatory detention under Section 1231(a) because the removal period has not yet begun. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008) (citing 8 U.S.C. § 1231(a)(1)(B)(ii)) ("Because § 1231(a) authorizes detention only '[d]uring the removal period,' § 1231(a)(2), and 'beyond the removal period,' § 1231(a)(6), it clearly does

not provide any authority before the removal period."). "Statutorily, it follows that Petitioner's current detention is governed by the pre-removal-period detention statute, § 1226(a), rather than the post-removal-period detention statute, § 1231(a)." *Yuehui Chen v. Noem*, No. 5:26-cv-00397-SSS-DTB, 2026 U.S. Dist. LEXIS 31999, at *8-9 (C.D. Cal. Feb. 13, 2026); *see also Padilla-Ramirez v. Bible*, 882 F.3d 826, 830-31 (9th Cir. 2017) ("If [the removal order is administratively final], then [S]ection 1231(a) controls. If not, then [S]ection 1226(a) provides the only authority to detain [the petitioner].").

### B.    Due Process

Petitioner avers that her prolong detention violates due process because Respondents "cannot establish a specific, foreseeable date for her removal." (Dkt. No. 1 at 5 ¶ 23.)

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

In *Zadvydas*, the Supreme Court found that a six-month period of post-removal detention is presumptively reasonable. *Id.* at 701. After the six-month period, a petitioner challenging detention must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden then shifts to the government to produce "evidence sufficient to rebut that showing." *Id.* "Under Ninth Circuit precedent, the due process considerations under the *Zadyvdas* framework are not limited to § 1231(a) detentions that follow an administratively final removal order." *Yuehui Chen*, 2026 U.S. Dist. LEXIS 31999, at *10; *Prieto-Romero*, 534 F.3d at 1062 ("[T]hat [a noncitizen] is

7

being held under § 1226(a), and not § 1231(a)(6), does not render *Zadvydas* inapplicable."); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078 (9th Cir. 2006) (concluding that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period" and that "consistent with the Supreme Court's approach in *Zadvydas*, . . . the statutes at issue permit detention only while removal remains reasonably foreseeable").

Here, Petitioner has sufficiently demonstrated that there is no significant likelihood of her removal in the reasonably foreseeable future.  Petitioner's BIA appeal of her removal order remains pending, and neither "Petitioner nor the Court can be assured that her BIA appeal will be resolved with 'reasonable expedition' because review in the BIA is not bound by 'strict procedural rules' that govern in the Ninth Circuit of Appeals." *Yuehui Chen*, 2026 U.S. Dist. LEXIS 31999, at *15 (quoting *Prieto-Romero*, 534 F.3d at 1064-65).  "The mere fact that [Petitioner] has sought relief from removal certainly does not authorize the government to indefinitely delay making a decision." *Yuehui Chen*, 2026 U.S. Dist. LEXIS 31999, at *17 (C.D. Cal. Feb. 13, 2026).  It would be untenable for this Court to suggest that Petitioner's "choice to appeal . . . adverse rulings weighs against any constitutional claim that [s]he may make regarding her detention during the course of the appeal." *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019); *see also Liban M. J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019) ("Petitioner is entitled to raise legitimate defenses to removal, . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable.").  Thus, the burden shifts to Respondents to rebut Petitioner's showing.

In their Answer, Respondents only discuss administrative exhaustion.  Respondents do not provide any evidence of Petitioner's impending removal to rebut Petitioner's showing.  Thus, Respondents effectively concede the issue of Petitioner's prolonged detention without a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Generally, "the government's purported interest in detaining [a noncitizen is] severely diminished when there [is] no significant likelihood that the [noncitizen] could be removed." *Prieto-Romero*, 534 F.3d at 1063-64 (citing *Demore v. Hyung Joon Kim*, 538 U.S. 510, 527 & n.10 (2003)).  Indeed, "[t]he 'indefinite and potentially permanent' civil detention of such [a noncitizen] would clearly pose serious substantive due process concerns."  *Id.* (quoting *Zadvydas*, 533 U.S. at 696).  Therefore, the Court finds that Petitioner's prolonged detention without a significant likelihood of her removal in the reasonably foreseeable future is in violation of her substantive due process rights.

"Even if the Court were to find that Petitioner's continued detention is permitted by statute, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Yuehui Chen*, 2026 U.S. Dist. LEXIS 31999, at *18 (quoting *Zadvydas*, 533 U.S. at 690-91).  To determine whether the government's procedures were constitutionally sufficient, courts apply the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Here, the Court finds that all three *Mathews* factors strongly weigh in favor of Petitioner and that Petitioner's detention is therefore in violation of her right to procedural due process.

With respect to the first *Mathews* factor, Petitioner gained a liberty interest in her continued freedom when she was previously released on parole on April 5, 2024.  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial

discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). That the terms of Petitioner's parole generally "allow[] for discretionary termination or expiration does not somehow obviate the need for the Government to provide [an] individualized hearing prior to re-detaining the parolee." *Id.* at 1136-37 (citing *Pinchi*, 792 F. Supp. 3d at 1032); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) ("Respondents have not provided a reasoned explanation or any changed circumstances that would justify their current departure from their prior decision" that Petitioner was eligible for release on parole."). Thus, the first *Mathews* factor weighs in Petitioner's favor.

Turning to the second *Mathews* factor, it is clear "[t]here is [] a significant risk of erroneous deprivation that the additional procedural safeguard of a pre-detention custody redetermination hearing would help protect against." *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 U.S. Dist. LEXIS 173976, at *14 (N.D. Cal. Sep. 5, 2025). As noted, Petitioner was previously released on parole in 2024. Despite there being no indication in the record before this Court of any change in Petitioner's circumstances, Respondents nevertheless re-detained Petitioner on June 25, 2025 without notice or a pre-deprivation hearing. Even if Respondents could point to some basis for revoking Petitioner's release on parole, the fact "[t]hat the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) (citing *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1034 (N.D. Cal. 2025)). Thus, the risk of erroneous deprivation is particularly high in Petitioner's case as her parole was "revoked without written notice or reason." *Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 U.S. Dist. LEXIS 255174,

10

at *10 (E.D. Cal. Dec. 9, 2025).  Moreover, that Petitioner received a post-deprivation bond hearing does not remedy the harm that is the subject of this Petition—Petitioner's "potentially erroneous detention."  *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 U.S. Dist. LEXIS 133824, at *7 (N.D. Cal. July 14, 2025).  Therefore, the second *Mathews* factor weighs in Petitioner's favor.

Finally, as to the third *Mathews* factor, Respondents have neither identified a legitimate interest that would support revocation of parole and re-detention without notice nor claimed that providing notice or a pre-detention hearing would be an administrative or financial burden. *Hernandez*, 872 F.3d at 990, 994 (finding "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions"); *Doe v. Becerra*, 787 F. Supp. 3d at 1094 ("The effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case."); *Qian Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 U.S. Dist. LEXIS 165913, at *17-18 (C.D. Cal. Aug. 26, 2025) (finding "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government" to be minimal).  As such, the third *Mathews* factor also weighs in Petitioner's favor.

## CONCLUSION

In sum, the Court concludes that Petitioner's prolonged detention contravenes statutory authority and due process.  Though "[a] pending BIA appeal may suspend the running of a statutory removal period[, i]t does not toll the clock on the life of a person held in custody, deprived of her due process rights, awaiting adjudication of the merits of her challenge to the validity of a removal order."  *Yuehui Chen*, 2026 U.S. Dist. LEXIS 31999, at *24-25 (C.D. Cal. Feb. 13, 2026).  Because the Court finds that Petitioner is entitled to habeas relief on her

primary claim regarding her prolonged detention, the Court declines to address Petitioner's alternative argument concerning her bond hearing.

Accordingly, **IT IS ORDERED** that:

(1)    Judgment shall be entered granting the Petition;

(2)    A writ of habeas corpus is hereby issued requiring Respondents to immediately release Petitioner (A#245-951-342) and preventing Respondents from re-detaining Petitioner unless Respondents demonstrate changed circumstances that Petitioner's removal is significantly likely in the reasonably foreseeable future and provide Petitioner adequate notice and an opportunity to be heard; and

(3)    Respondents shall file a status report within five (5) days of this Order confirming that Petitioner has been released from custody consistent with the terms of this Order.

DATE: June 15, 2026

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE